UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS, ET AL., | : | |
| | : | |
| Plaintiffs, | | 09 Civ. 9479 (JGK) (AJP) |
| | : | |
| -against- | | **REPORT AND RECOMMENDATION** |
| | : | |
| ROCK-IT CONTRACTING, INC., | | |
| | : | |
| Defendant. | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable John G. Koeltl, United States District Judge:**

On February 22, 2010, Judge Koeltl granted the motion of plaintiffs New York City and Vicinity Carpenters Labor-Management Corporation and New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Fund and the Charity Fund (collectively, "the Funds") for a default judgment against defendant Rock-It Contracting, Inc. (Dkt. No. 9: 2/22/09 Order.) The Funds filed material in support of inquest damages on March 5, 2010. (Dkt. Nos. 13-18.) The deadline for Rock-It to respond passed on March 19, 2010 (see Dkt. No. 11: 2/23/10 Order), and Rock-It has not responded to the motion.

2

For the reasons set forth below, the Court should enter judgment for the plaintiff Funds against defendant Rock-It for $46,821.66 plus attorneys' fees and costs of $2,960.00, for a total of $49,781.66, (plus daily interest of $5.30 for each day after March 26, 2010).

## FACTS

Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

The complaint alleges that Rock-It was an employer "in an industry affecting commerce within the meaning of ERISA." (Dkt. No. 1: Compl. ¶ 7.) From 2008 until plaintiffs filed the complaint, Rock-It and the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America had in "force and effect a collective bargaining agreement" which "incorporated provisions" of the Funds' "Trust Agreements." (Compl. ¶¶ 8-9, 11; Dkt. 16: Grabois Aff. Ex. A: Collective Bargaining Agreement, Art. XV, §§ 1-8.)  The collective bargaining agreement obligated Rock-It to "make timely contributions to the Funds for each hour worked by each employee covered thereby for health, welfare, pension, vacation, annuity and other fringe benefits." (Compl. ¶ 10.)  The collective bargaining agreement provides that if a court enters judgment in favor of the Funds for unpaid fringe benefit contributions, Rock-It shall pay interest on

the unpaid contributions at Citibank's prime rate plus two percent. (Collective Bargaining Agreement, Art. XV, § 6.)

The complaint alleges that defendant Rock-It owes plaintiffs fringe benefit contributions plus interest, liquidated damages, attorneys' fees and costs. (Compl. ¶¶ 12-14 & Wherefore Clause.) Plaintiffs audited Rock-It's books for the period between July 25, 2008 and April 20, 2009 and found that Rock-It failed to remit $36,813.47 in fringe benefit payments. (Dkt. No. 15: Mellio Aff. ¶¶ 3, 5 & Ex. A: Audit Report at 1; Compl. ¶ 12.)

## ANALYSIS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

The Funds have provided sufficient proof, in the form of audit reports, of the principal amount of unpaid fringe benefit contributions ($36,813.47). (See Dkt. No. 15: Mellio Aff. ¶¶ 3, 5 & Ex. A: Audit Report.) The Funds should be awarded that amount.

In addition to the principal amount, ERISA entitles plaintiffs to interest, liquidated damages and attorneys' fees:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

> (A)  the unpaid contributions,
>
> (B)  interest on the unpaid contributions,
>
> (C)  an amount equal to the greater of –
>
>> (i)  interest on the unpaid contributions, or
>>
>> (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)  such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

The collective bargaining agreement provides that the interest rate on unpaid contributions is Citibank's prime rate plus two percent. (See pages 2-3 above; see also Dkt. No. 17: Sgroi Aff. ¶¶ 2-4.) Based on that rate, the Funds' Payroll Audit Manager calculated that Rock-It owes $2,534.20 in interest through March 5, 2010, and $5.30 per day thereafter. (Sgroi Aff. ¶¶ 2-4.)[1] Through March 26, 2010, therefore, another $111.30 is due. Rock-It thus owes $2,645.50 in interest through March 26, 2010. (See Sgroi Aff. ¶ 4.)

---

[1]  Based on the Court's estimations, the Funds' calculations appear correct.

5

In addition to interest, ERISA also provides for the greater of interest (i.e., doubling the interest) or liquidated damages of 20% of the unpaid contributions. (See page 3 above.) Here, 20% of the unpaid contributions, i.e., $7,362.69, is the greater amount, and the Funds should be awarded that amount.

The Court therefore should award the following:

| | |
|---|---:|
| Fringe Benefits Principal | $ 36,813.47 |
| Interest on Fringe Benefits | 2,645.50 |
| Liquidated Damages on Fringe Benefits | 7,362.69 |
| | $ 46,821.66 |

**Attorneys' Fees**

The Funds also are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D) (quoted above). As the fee applicant, the Funds "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.), aff'd, 164 F.3d 617 (2d Cir. 1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116 (1999).[2]

---

[2] Accord, e.g., Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 Fed. Appx. 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

6

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[3]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

In 2008, however, the Second Circuit acknowledged that the lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness," and abandoned use of the term due to longstanding confusion regarding its proper application, while leaving the methodology essentially

---

[3] The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.  E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

H:\OPIN\NYC Dist.Council of Carpenters v. Rock-It

7

the same.[4/]  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.  The Second Circuit held that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors;[5/] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "<u>presumptively reasonable fee</u>."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 (emphasis added).[6/]

---

[4/]  The Second Circuit added: "While we do not purport to require future panels of this court to abandon the term – it is too well entrenched – this panel believes that it is a term whose time has come."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 n.4.

[5/]  The twelve Johnson factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases.  Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

[6/]  See also, e.g., Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (Arbor
(continued...)

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943; accord Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15; Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996).

"There is no precise rule or formula for making these determinations." Hensley v. Eckerhart, 461 U.S. at 436, 103 S. Ct. at 1941. "The district court has broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each action taken or the time spent on it," Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" and ensure the final award is reasonable. Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

Here, the Funds seek $3,280 in attorneys' fees and support their request with an affidavit detailing the services performed and time spent. (See Dkt. No. 18: Grabois Fee Aff.) The Funds' application is based on a total of fourteen hours of work: one hour by partner Gary Rothman at the hourly rate of $530, five hours by associate Andrew Grabois at the hourly rate of $350, and

---

[6]/ (...continued)
Hill relied on the substance of both the "'lodestar' approach" and the "Johnson" approach to "set forth a standard that [the Second Circuit] termed the 'presumptively reasonable fee.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("In the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citing Arbor Hill); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 536-37 (S.D.N.Y. 2008).

1.5 hours by an intern and 6.5 hours by a paralegal at the hourly rate of $125. (Grabois Fee Aff. ¶¶ 2-11.)[7] While the time expended and the rates requested for the intern and paralegal were reasonable, the rates requested for Rothman and Grabois exceed the rates generally charged for similar work in this District and should be reduced to $400 per hour for partner Rothman and $300 per hour for associate Grabois. See, e.g., N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (granting summary judgment in ERISA failure to pay fringe benefit case and awarding $425 per hour for partners, $300 per hour for associates and $150 per hour for paralegals); N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr., 06 Civ. 13150, 2008 WL 5159777 at *13 (S.D.N.Y. Dec. 9, 2008) (Lynch, D.J.) (awarding in an ERISA default judgement case $425 per hour for partners, $300 per hour for an associate and $150 per hour for paralegals and noting that the rates awarded were "commensurate with those generally charged for similar work in this district"); Trustees of the CWA Local 14156 - Printers, Publishers & Media Workers Benefit Fund v. Rumar Typesetting & Design, 05 Civ. 1455, 2006 WL 1227183 at *3 (S.D.N.Y. May 5, 2006) (awarding in an ERISA default judgement case the lawyers' regular billing rates of $200 per hour for the partner and the associate and $65 per hour for the paralegal); see also, e.g., Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502, 2010 WL 985294 at *3 (E.D.N.Y. Mar. 15, 2010) (awarding partner with forty years experience

---

[7]  Partner Rothman has approximately twenty-eight years of experience, including "extensive experience in all aspects of Labor and Employment Law," while associate Grabois was admitted to the New York State bar in 2005. (O'Dwyer & Bernstein - Gary Rothman, at http://www.odblaw.com/gr.html; N.Y. State Unified Court Sys. Attorney Directory, at http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5401867 & 5655801.)

$275 per hour in ERISA default judgment case); Masino v. Architectural Pavers Corp., No. 09-CV-2213, 2010 WL 415286 at *4 (E.D.N.Y. Jan. 15, 2010) (While "'Courts in this District have awarded $200-$375 per hour for partners, $200-$250 per hour for senior associates and $75 per hour for paralegals,'" the court, in ERISA default judgment case, awarded fees, as requested, of $175 per hour for associate with nine years of ERISA and labor law experience and $80 per hour for a legal assistant and noted that "[t]hese rates are in line with the rates that have been found reasonable in the Eastern District."); Finkel v. Jones Lang LaSalle Am., Inc., No. 08-CV-2333, 2009 WL 5172869 at *5 (E.D.N.Y. Dec. 30, 2009) (In ERISA default judgment case, plaintiff's counsel's rates of "$250 per hour for partners, $235 per hour for senior associates, $225 per hour for junior associates, and $80 per hour for paralegals. . . . [were] reasonable for the type of work performed."); Empire State Carpenters Pension v. Paterson Constr., LLC, No. 07-CV-4613, 2009 WL 4981860 at *4 (E.D.N.Y. Dec. 11, 2009) (awarding in ERISA default judgement case between $175 and $225 per hour based on attorneys' seniority and the nature of the work); La Barbera v. Fed. Metal & Glass Corp., 666 F. Supp. 2d 341, 354 (E.D.N.Y. Oct. 27, 2009) (awarding in an ERISA default judgement case $280 per hour for attorney who graduated law school in 1999).

Accordingly, plaintiffs should be awarded $2,900 in attorneys' fees. Plaintiffs also are entitled to $60 for the cost of plaintiffs' process server. (See Grabois Fee Aff. ¶ 12.)

## **CONCLUSION**

For the reasons stated above, the Court should award plaintiffs as follows:

| | |
|---|---:|
| Fringe Benefits Principal | $ 36,813.47 |
| Interest on Fringe Benefits | 2,645.50 |
| Liquidated Damages on Fringe Benefits | 7,362.69 |
| Attorneys' Fees | 2,900.00 |
| Costs | 60.00 |
| Total | $49,781.66 |

Thus, the Funds should be awarded $49,781.66 plus daily interest of $5.30 for each day after March 26, 2010.

## SERVICE

Plaintiffs' counsel is to serve this Report and Recommendation on defendant Rock-It Contracting, Inc. and file proof of service with the Court.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, 500 Pearl Street, Room 1030, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Koeltl (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86

(1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  New York, New York
        March 26, 2010

Respectfully submitted,

_____
Andrew J. Peck
United States Magistrate Judge

Copies to: Andrew R. Grabois, Esq.
           Judge John G. Koeltl

H:\OPIN\NYC Dist.Council of Carpenters v. Rock-It